IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SEISER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 2353 |
| | ) | |
| CITY OF CHICAGO and DEBRA KIRBY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On March 29, 2011, Chicago Police Department Officer Michael Seiser ("Officer Seiser") was patrolling in a vehicle while drinking clear liquid from a 1.75-liter liquor bottle. Multiple witnesses alleged that they had seen him driving while drinking from a large bottle that appeared to contain alcohol. Officer Seiser was subsequently arrested for driving under the influence of alcohol and transporting an open container of alcohol in a vehicle. After his arrest, he passed field sobriety tests and a breathalyzer, and a subsequent analysis at a crime laboratory found that the liquid did not contain alcohol. Officer Seiser's complaint alleges claims under 42 U.S.C. § 1983 against Deputy Superintendent Debra Kirby ("Deputy Kirby") in her individual capacity for unlawful detention and for an unreasonable search in the form of the breathalyzer test. (Dkt. No. 1.) The complaint also alleges one claim under state law against the City of Chicago ("the City") for malicious prosecution. (*Id.*) On February 15, 2013, Deputy Kirby and the City moved for summary judgment on all of Officer Seiser's claims. (Dkt. No. 33.) For the reasons explained below, their motion is granted in its entirety, and summary judgment is entered against Officer Seiser on all claims.

BACKGROUND

The following facts are undisputed. On March 29, 2011, Officer Seiser was assigned to patrol an area on the South Side of Chicago as part of the Operation Safe Schools Program, from 1 p.m. to 4 p.m. (Dkt. No. 35 ("Defs.' 56.1(a)(3) SMF") ¶¶ 16, 17.) During his shift that day, Officer Seiser was in uniform, but driving his personal vehicle, a Pontiac Grand Am. (*Id.* ¶¶ 20, 21, 25.) While driving southbound on Union Avenue, Officer Seiser was drinking from a 1.75-liter T.G.I. Friday's Mudslide bottle. (*Id.* ¶ 18.) T.G.I. Friday's Mudslide is an alcoholic beverage. (*Id.* ¶ 19.) A label on the bottle stated, "[t]he liquor is in it." (*Id.*)

At 2:18 p.m., the Chicago Police Department received a phone call from a woman later identified as Kathleen Glassford. (*Id.* ¶ 20-23.) Glassford called to report an unknown individual driving a silver Grand Am and drinking from what appeared to be a bottle of liquor. (*Id.*) She reported the license plate number, and then called back 10 minutes later to say that the individual was a police officer. (*Id.*) Sergeant John Verta ("Sergeant Verta") responded to the scene, and met with Glassford's daughter, Gail Glassford, and another witness, Roseann Anderson. (*Id.* ¶¶ 8, 23-25.) Both witnesses stated that they observed a police officer driving a gray vehicle while drinking from a gallon-sized bottle of liquor. (*Id.* ¶¶ 25-26.)

Sergeant Verta then approached Officer Seiser, on the passenger side of Officer Seiser's vehicle. (*Id.* ¶ 27.) He observed in the front passenger seat what appeared to be a bottle of liquor with a red and white label, a broken seal, and clear liquid inside. (*Id.* ¶ 27; *see also id.* ¶ 38.) Sergeant Verta asked Officer Seiser, "What's in the bottle?" (*Id.* ¶ 28.) Seiser responded: "What bottle?" (*Id.*) Officer Seiser claims that he told Sergeant Verta that there was no alcohol in the bottle. (*Id.*) Officer Seiser refused two requests by Sergeant Verta to open the door so he could inspect the bottle, and said that Sergeant Verta would need to "[g]et a warrant" in order to access

the vehicle. (*Id.*) Sergeant Verta testified that he did not smell alcohol on Officer Seiser's breath or hear slurred speech. (Dkt. No. 42 ("Pl.'s 56.1(a)(3) SMF") ¶ 5.)

At this point, Sergeant Verta contacted a watch commander, who told him to bring Officer Seiser to the station and then notified the Internal Affairs Division. (Defs.' 56.1(a)(3) SMF ¶¶ 29-31.) Sergeant Verta drove Officer Seiser to the police station, while Internal Affairs Sergeant Matthew Price ("Sergeant Price") headed to the scene to inspect the vehicle and interview witnesses. (*Id.* ¶¶ 13, 29-31.) Sergeant Price—after being briefed about Sergeant Verta's encounter with Officer Seiser and given some background about the witnesses—met with Roseann Anderson, Gail Glassford, and another witness, Gary Anderson. (*Id.* ¶ 37.) Each of these witnesses told him that they had observed a police officer drinking what appeared to be an alcoholic beverage while driving. (*Id.* ¶¶ 40-42.) Roseann Anderson signed a sworn affidavit alleging the same. (*Id.* ¶ 40.) Gary Anderson told Sergeant Price that, after attempting to obtain Officer Seiser's license plate number, he had a "confrontation" with Officer Seiser during which he smelled alcohol on Officer Seiser's breath. (*Id.* ¶¶ 42-44.) Sergeant Price also observed the vehicle, and saw the bottle, which appeared to him to be a partially filled alcoholic beverage bottle. (*Id.* ¶ 45.)

Sergeant Price then contacted a lieutenant at the Internal Affairs Division, who relayed the information to Internal Affairs Division Chief Juan Rivera ("Chief Rivera"). (*Id.* ¶¶ 15, 46-47.) Chief Rivera then met with Deputy Kirby, and informed her of all the information that had been relayed up the chain of command from Sergeant Price. (*Id.* ¶ 46-51.) Deputy Kirby then told Chief Rivera to process Officer Seiser criminally for the offense of driving under the influence of alcohol, and requested that the bottle be retrieved from Officer Seiser's car. (*Id.* ¶ 54-55.) She also ordered an administrative investigation. (*Id.* ¶ 56.)

The record is unclear about exactly what time Officer Seiser was taken to the police station, but at 5:52 p.m., he was officially arrested. (Dkt. No. 35, Ex. S, at 1.) The arrest record lists charges of both driving under the influence and transporting an open container of alcohol in a vehicle. (*Id.*) After Seiser's arrest, Officer Brian Madsen ("Officer Madsen") administered sobriety tests and a breathalyzer at the station. (*Id.* at 3; Defs.' 56.1(a)(3) SMF ¶ 61.) Officer Seiser passed all of the sobriety tests as well as the breathalyzer test, which showed that he had a blood alcohol content of 0.000. (Defs.' 56.1(a)(3) SMF ¶ 61.) Neither Officer Madsen nor Officer Andrew Kral, who also participated in the investigation after the arrest, perceived anything about Officer Seiser's behavior that indicated he was intoxicated. (Pl.'s 56.1(a)(3) SMF ¶¶ 11-12.)

Officer Seiser was issued a citation for transporting an open container of alcohol in a vehicle. (Defs.' 56.1(a)(3) SMF ¶¶ 62, 65.) He initially refused to allow a search of his personal vehicle as part of the administrative investigation, apparently believing that the search was part of the criminal investigation. (*Id.* ¶ 68; Dkt. No. 42 ("Pl.'s Resp. to Defs.' 56.1(a)(3) SMF") ¶ 68.) Sergeant Price then issued Officer Seiser a direct order to allow the bottle to be recovered, which Officer Seiser obeyed. (Defs.' 56.1(a)(3) SMF ¶ 69.) At 8:17 p.m., March 29, 2011, Seiser was released on his own recognizance. (Pl.'s 56.1(a)(3) SMF ¶ 19.)

The bottle was recovered and sent to the Illinois State Police laboratory for testing. (*Id.* ¶¶ 70-71.) On April 29, 2011, a laboratory report was issued by the Illinois State Police indicating that the contents of the bottle had tested negative for alcohol. (Dkt. No. 35, Ex. U.) Officer Madsen attended court on May 18, 2011, for the open container citation and informed the prosecutor that the bottle had tested negative for alcohol. (Defs.' 56.1(a)(3) SMF ¶ 75; Dkt. No. 35, Ex. T.) The court dismissed the charge against Officer Seiser. (Defs.' 56.1(a)(3) SMF ¶ 75.)

LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of "informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact." *Kurowski v. Shinseki*, No. 12 C 1967, 2013 WL 1397708, at *2 (N.D. Ill. April 5, 2013) (Holderman, C.J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). The record must be viewed in the light most favorable to the non-movant. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

DISCUSSION

Officer Seiser's Complaint alleges a Fourth Amendment violation—the predicate for Officer Seiser's federal claims under 42 U.S.C. § 1983—as well as allegations under Illinois state law of false arrest, false imprisonment, and malicious prosecution. (Dkt. No. 1 ("Compl.") ¶ 19.) In his response to the Defendants' motion for summary judgment, however, Officer Seiser abandons his false arrest claim and clarifies that his only § 1983 claim is directed at Deputy Kirby, in her individual capacity, for unlawful detention. (*See* Dkt. No. 41 ("Pl.'s Resp.") at 5-6 ("Plaintiff . . . does not complain of a false arrest.").)[1] However, he also appears to allege a

---

[1] In fact, Officer Seiser refers to his § 1983 claim as one "in the nature of false imprisonment." (Pl.'s Resp. at 6.) The court will construe Officer Seiser's claim as one for unlawful post-arrest detention under the Fourth Amendment. *See Ray v. City of Chicago*, 629 F.3d 660, 663 (7th Cir. 2011) (describing a "post-arrest detention claim" under the Fourth Amendment); *Warfield v. City of Chicago*, 565 F. Supp. 2d 948, 967 (N.D. Ill. 2008) (Castillo, J.).

distinct § 1983 claim against Deputy Kirby, also in her individual capacity, for conducting an unreasonable search in the form of the breathalyzer test. (*See id.* at 6.)[2] Officer Seiser's response also states that his only state law claim is for malicious prosecution against the City. (*Id.* at 5-6.) To the extent that Officer Seiser's Complaint includes any other causes of action, they are forfeited in light of his response to the summary judgment motion. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (claims and arguments not presented to a district court in response to a summary judgment motion are deemed abandoned and waived).

I. Section 1983 Claim For Unreasonable Search Against Deputy Kirby

Officer Seiser argues that Deputy Kirby should be liable under § 1983 for an unreasonable search of his person, in the form of a breathalyzer test, while he was held at the police station. According to Officer Seiser, this search was unreasonable because there was no probable cause to arrest him for driving under the influence and the detention and search were improperly used "'for the purpose of gathering additional evidence to justify the arrest.'" (Pl.'s Resp. at 10-11 (quoting *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)).)

Breathalyzer tests constitute searches within the meaning of the Fourth Amendment, and are therefore subject to the strictures of the amendment's prohibition of unreasonable searches and seizures. *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17 (1989); *see also Schmerber v. California*, 384 U.S. 757, 767 (1966). Although searches conducted without warrants are per se unreasonable, *see Katz v. United States*, 389 U.S. 347, 357 (1967), there are a few specific common exceptions, including a search incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *Schmerber*, 384 U.S. at 770-71. Under those

---

[2] Officer Seiser's Complaint was unclear about the nature of his § 1983 claim, and the court notes that his response to Defendants' motion for summary judgment hardly untangles the knot.

precedents, for example, a "police officer may obtain a compulsory blood test to determine blood alcohol content where probable cause exists to effect an arrest, circumstances [d]o not permit time to obtain a warrant, and the test is a reasonable test." *Karberg v. Weber*, No. 03 C 50071, 2004 WL 2967015, at *3 (N.D. Ill. Nov. 19, 2004) (Reinhard, J.) (citing *Schmerber*, 384 U.S. at 770-71). Similarly, the application of a breathalyzer test is appropriate where the police have probable cause to believe that the defendant committed the crime of driving under the influence. *See Ebert v. Vill. of Kildeer*, No. 07 CV 1355, 2009 WL 901483, at *6 (N.D. Ill. Mar. 31, 2009); *see also Skinner*, 489 U.S. at 617.

Thus, a threshold inquiry is whether there was probable cause to arrest Officer Seiser for driving under the influence. "A police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within her knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 878-79 (7th Cir. 2012) (citation omitted). This "flexible, commonsense approach does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999). Further, there is no requirement that officers resolve every inconsistency in witness reports in forming probable cause, *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999), or that they conduct further investigation after establishing probable cause, *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004), *amended on denial of reh'g*, 412 F.3d 794 (7th Cir. 2005). The Seventh Circuit has also "consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (collecting cases).

7

In this case, there was probable cause to arrest Officer Seiser not only for transporting a container of open alcohol in a vehicle in violation of 625 ILCS § 5/11-502, but also for driving under the influence of alcohol in violation of 625 ILCS § 5/11-501. Three separate complainants—Roseann Anderson, Gail Glassford, and Gary Anderson—told Sergeant Price, an investigating Internal Affairs officer, that they had observed a police officer drinking what appeared to be an alcoholic beverage. (Defs.' 56.1(a)(3) SMF ¶¶ 40-42.) Roseann Anderson signed a sworn affidavit stating that the individual appeared to be "drinking from a large clear bottle with a red and white label that appeared to be an alcoholic beverage." (*Id.* ¶ 40.) Gary Anderson told Sergeant Price that he "had a confrontation with [Officer Seiser] after attempting to obtain [Officer Seiser's] license plate number," and that he smelled alcohol on Officer Seiser's breath. (*Id.* ¶¶ 43-44.)

Additionally, Officer Seiser was uncooperative when Sergeant Verta approached him. The bottle—which held 1.75 liters and had a red and white label, contained a clear liquid, and had a broken seal—was visible in the vehicle from the passenger side door, where Sergeant Verta was standing. (*Id.* ¶ 27.) After Sergeant Verta asked "What's in the bottle?," Officer Seiser responded, "What bottle?" (*Id.* ¶ 28.) When Sergeant Verta pressed on, asking Officer Seiser to open the door and give him the bottle, Officer Seiser twice refused to do so, telling Sergeant Verta to get a warrant. (*Id.*) Sergeant Price relayed this information to supervisors, who ultimately contacted Deputy Kirby. (*Id.* ¶¶ 46-49.)

These facts are more than sufficient for a reasonable person to conclude both that Officer Seiser was transporting an open container of alcohol in a vehicle and that he had been driving under the influence. This is true notwithstanding the minor, immaterial inconsistencies in witness reports identified in Officer Seiser's response brief—for example, that Glassford claimed to have

8

seen Officer Seiser driving over the speed limit while Roseann Anderson said he had been driving very slowly. (Pl.'s Resp. at 8.) *See Spiegel*, 196 F.3d at 725 (unnecessary to resolve all witness inconsistencies in formation of probable cause). It is also true despite the fact that Sergeant Verta did not hear slurred speech from Officer Seiser or observe signs of drunkenness. Those observations may sometimes be sufficient to aid in a probable cause determination for driving under the influence, but they are not necessary.[3]

Further, the circumstances here did not enable the police officers to obtain a warrant. Because of the speed with which alcohol leaves the bloodstream, there was a legitimate concern about the the destruction of evidence. *See Schmerber*, 384 U.S. at 770. The test itself was also a reasonable and relatively nonintrusive one, particularly compared to the blood test authorized in *Schmerber*. *See id.* at 762; *see also Skinner*, 489 U.S. at 625 ("[B]reath tests do not require piercing the skin and may be conducted safely outside a hospital environment and with a minimum of inconvenience or embarrassment.") In light of these uncontested facts, no reasonable jury could find that the application of the breathalyzer test here was an unreasonable search under the Fourth Amendment.

II. Section 1983 Claim For Unlawful Detention Against Deputy Kirby

Officer Seiser also makes a second claim under § 1983, arguing that he was unreasonably detained for the purposes of gathering additional evidence against him. This claim is related to his argument that the breathalyzer was an unreasonable search—Officer Seiser argues that the

---

[3] Officer Seiser also is not entitled to rely on the additional observations of Sergeants Madsen and Kral, who testified during their depositions that they did not see anything about Seiser to indicate that he was intoxicated. These officers did not observe Seiser until well after Deputy Kirby made the decision to process Officer Seiser criminally. The time frame for analyzing a probable cause determination is the moment the decision was made. *See Fleming*, 674 F.3d at 878-79. Facts learned afterward are not relevant. *Id.* Moreover, in this case, it is not clear that Sergeant Madsen or Sergeant Kral communicated their observations to Deputy Kiryby or anyone else until their depositions.

"unreasonable" detention was for the purpose of administering the "unreasonable" breathalyzer (*see* Pl.'s Resp. at 10-11)—but distinct in that it touches on the issue of unlawful detention. That is, Officer Seiser complains here of a seizure, whereas the breathalyzer was a search.

"A police officer who unlawfully restrains an individual's movement violates the Fourth Amendment and opens [him]self to liability for unlawful detention . . . ." *Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 649 (N.D. Ill. 2011) (Leinenweber, J.) (citations omitted). However, "the existence of probable cause is a complete defense." *Id.* (citation omitted); *see also Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for . . . false imprisonment . . . ."). As explained above, there is no reasonable dispute here that the police had probable cause to arrest Officer Seiser.

In addition, "[a] person arrested without a warrant may be held prior to a judicial determination of probable cause for a brief period to carry out the administrative steps incident to arrest." *Ray v. City of Chicago*, 629 F.3d 660, 663 (7th Cir. 2011) (citation and quotation marks omitted). Here, there can be no reasonable dispute that Officer Seiser's detention was lawful. Officer Seiser was arrested at 5:52 pm, promptly subjected to a breathalyzer test, and released at 8:17 pm, less than two and a half hours later. The undisputed evidence shows that Officer Seiser was released as soon as practicable after the police determined that he had a blood alcohol content of 0.000. Accordingly, summary judgment for Deputy Kirby is appropriate on Officer Seiser's § 1983 claim of unlawful detention.

Moreover, even if Deputy Kirby did not have probable cause to detain Officer Seiser, she is entitled to qualified immunity. Under the qualified immunity doctrine, Deputy Kirby is shielded from civil liability if she can "demonstrate that [s]he was performing a discretionary

function and that a reasonable law enforcement officer would have believed that, at the time [s]he acted, [her] actions were within the bounds of the law." *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007) (citation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted).

Officer Seiser argues that Deputy Kirby lacked the discretionary authority to process Officer Seiser criminally because she "usurped the traditional function of the street police officers when she ordered that Officer Seiser be processed criminally for DUI." (Pl.'s Resp. at 12.) Deputy Kirby testified at her deposition that she was empowered to make probable cause determinations when a police officer is accused of committing a crime while on duty, and that she oversaw the Internal Affairs Division. (Dkt. No. 35, Ex. C., at 5:15-6:5; Dkt. No. 44, Ex. C, at 74:22-75:13.) Officer Seiser has responded only with conclusory statements about Deputy Kirby's authority, without any citation to authority or support from the record. Because there is no evidence that Deputy Kirby was acting beyond the scope of her authority and because her determination of probable cause based on information relayed up the chain of command from Sergeant Price was reasonable, Deputy Kirby is entitled to qualified immunity, and summary judgment is appropriate on that basis as well.

III. State Law Malicious Prosecution Claim Against the City

Officer Seiser also brings a malicious prosecution claim against the City for continuing to prosecute him for the open container violation. To state a claim for malicious prosecution, Officer Seiser must show that "(1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an

absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). As with the § 1983 unlawful detention claim, state law malicious prosecution claims are foreclosed by a finding of probable cause. Officer Seiser agrees (*see* Pl.'s Resp. at 14), but argues that the probable cause standard for the Illinois tort of malicious prosecution is stricter than the probable cause to arrest standard under the Fourth Amendment.[4]

Illinois courts have defined "probable cause" with respect to malicious prosecution involving criminal proceedings as "a state of facts that would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1219 (Ill. App. Ct. 2003) (internal quotation marks and citations omitted). "There is no need to verify the veracity of each item of information obtained; one need only act with reasonable prudence and caution in proceeding." *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 320 (Ill. App. Ct. 2006).

In this case, the police department obtained, from Officer Seiser's personal vehicle, a 1.75-liter bottle that, when originally purchased, contained alcohol. (Defs.' 56.1(a)(3) SMF ¶ 19.) A label on the bottle stated, "The liquor is in it." (*Id.*) Both parties agreed that, "[a]t the time the citation was issued, it was unknown whether the bottle observed in [Officer Seiser's] vehicle contained alcohol." (*See* Pl.'s Resp. to Defs.' 56.1(a)(3) SMF ¶ 64.) Police did not determine conclusively that the bottle did not contain alcohol until they received results from the crime lab about one month later. (Dkt. No. 35, Ex. U.) At the first court hearing thereafter, Officer Madsen appeared and told the prosecutor the contents of the bottle had tested negative

---

[4] Perhaps Officer Seiser pursues this line of argument because he already seems to have conceded that there was probable cause to arrest him for transporting open alcohol. (*See* Pl.'s Resp. at 2 ("[N]othing in this case turns on whether there was probable cause to arrest plaintiff for transporting open alcohol.").)

for alcohol, at which point the ticket was dismissed. (Pl.'s Resp. to Defs.' 56.1(a)(3) SMF ¶ 75; *see also* Dkt. No. 35, Ex. T.)

Based on the appearance of the bottle, there was probable cause to proceed with the open container charge. Until the City determined conclusively via testing that the bottle did not contain alcohol, the City was justified in pursuing charges against Officer Seiser. And as soon as the City made that determination, the ticket was dismissed. (*Id.* ¶ 74-75.) Thus, there is no indication that the prosecution proceeded improperly at any point; there is every indication that the police acted with "reasonable prudence and caution" in pursuing this charge against Officer Seiser. *See Ross*, 861 N.E.2d at 320. No reasonable jury could find otherwise, so summary judgment against Officer Seiser is appropriate.

## CONCLUSION

For the reasons explained above, defendants' motion for summary judgment (Dkt. No. 33) is granted in its entirety. Judgment is entered in favor of defendants on all counts. Civil Case Terminated.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 29, 2013